TECUMSEH NATIONAL BANK V. ANNA B. SAUNDERS.

FILED FEBRUARY 3, 1897.   No. 7028.

Successor to Bank: ASSUMPTION OF LIABILITY: ACTION BY CREDITOR:
    VERDICT FOR PLAINTIFF: EVIDENCE.  The evidence in this case ex-
    amined, and *held* not sufficient to sustain the judgment of the. dis-
    trict court.  NORVAL, J., dissents.

ERROR from the district court of Johnson county.
Tried below before BABCOCK, J.   *Reversed.*

*John H. Ames, C. Gillespie,* and *S. P. Davidson,* for plaint-
iff in error.

*T. Appelget, J. Hall Hitchcock,* and *L. C. Chapman, contra.*

RYAN, C.

There was a judgment in favor of Anna B. Saunders
in the district court of Johnson county, of which the judg-
ment defendant seeks a reversal in this court.   With this
there were submitted eight other cases, in each of which
the Tecumseh National Bank was the plaintiff in error,
the defendants in error being, respectively, Andrew Head,
Ann Smith, Sarah A. Brown, Allora Hull, Elias Young,
Alice Kershaw, Jane Turner, and Luke Corson.   On be-
half of all parties, it was earnestly requested on the argu-
ment that the evidence should be considered with refer-
ence to its sufficiency to sustain a verdict, and, if there
was not sufficient for that purpose, that this court should
so indicate, thereby enabling the parties litigant in all
the cases to avoid further costs, for it was conceded by
each party that in any further trial of either case the evi-
dence must necessarily be the same as is contained in the
bill of exceptions herein submitted for our examination.
We have, therefore, given the careful examination to the
evidence which the interests involved demand, and shall,
without separate discussions, direct in each case such

future action to be taken as we shall find to be proper from our consideration of this evidence.

The original petition in this case was filed August 19, 1893, against the Tecumseh National Bank, as successor of the Banking Association of Russell & Holmes, for the collection of a certain indebtedness of Russell & Holmes, as to which, it was alleged, the Tecumseh National Bank was liable. As requested, we have undertaken to determine as to this liability upon consideration of the evidence and shall, therefore, forbear a review of the pleadings.

There is no question made that the corporation known by the name of Russell & Holmes was indebted to Anna B. Saunders as claimed, upon two certificates of deposit, one of which was for $150, dated June 11, 1889, the other for $250, dated July 26, 1889. Neither of these was for a fixed time but by each it was provided that if the money was left on deposit for six months it should draw interest at the rate of five per cent per annum. The transfer by Russell & Holmes to the Tecumseh National Bank, which was April 12, 1890, was without the knowledge, much less the assent, of Anna B. Saunders. When she first learned of the existence of the Tecumseh National Bank it was doing a banking business in the same room and under the management of officers who had managed the banking business of Russell & Holmes. It was shown that by its own procurement the Tecumseh National Bank was advertised from May 30, 1890, until December 3, 1892, in a newspaper published at Tecumseh, as a successor of the bank of Russell & Holmes. As was pointed out in *Austin v. Tecumseh Nat. Bank*, 49 Neb., 412, the inference to be drawn from the successorship of one bank to another is controlled by the circumstances of such transfer. As has already been indicated, the defendant in error was not a party to this transfer and in no way sanctioned it, so that her rights are to be entirely governed by the inferences proper to be drawn from the circumstances attendant upon and constituting the transfer

between these two banking institutions.  Before this transfer there had been deposited with Russell & Holmes the sum of $25,000 to be used in buying bonds as a basis of issue for the proposed national bank and to defray its other necessary expenses.   When the transfer took place this amount was transferred to the credit of the Tecumseh National Bank, and of the $28,740 cash held by Russell & Holmes, $14,225.33 was likewise transferred.   The association of Russell & Holmes, just previous to the transfer, had loans, discounts, warrants, and orders to the amount of $139,825.15, of which there was turned over to the Tecumseh National Bank when it began business on April 14, 1890, $48,155.53 in amount, leaving in the possession of Russell & Holmes bills receivable represented by the difference between the above items.  Of individual deposits owing by Russell & Holmes, the Tecumseh National Bank assumed payment of $59,763.12.   The difference between the amount assumed by the Tecumseh National Bank, $59,763.12, and the cash and bills receivable turned over was $3,717.74, as to which there was such evidence as to show that it was provided for, but not evidence of a sufficiently exact nature to enable us to state with precision how this was done.

The capital stock of the Tecumseh National Bank was $50,000, of which $20,000 in par value was issued to Charles A. Holmes and James D. Russell.   This was paid for out of funds and property of the bank of Russell & Holmes.   At the organization of the Tecumseh National Bank Charles A. Holmes and James D. Russell paid in cash fifty per cent of their subscriptions.   The balance was paid afterward, as needed, largely by the conversion of personal and real property.  Of the latter class of property, subsequently, the bank building of Russell & Holmes was turned in to the Tecumseh National Bank at a valuation of $8,500.   How these individuals became the owners of this building there was no question made either by the pleadings or the evidence.   There was no objection that this valuation was unfair and, for our

present purpose, it must be assumed to be just. Of the $20,000 worth of stock subscribed for by James D. Russell and Charles A. Holmes there was, therefor, paid in cash $10,000 at the time of the organization of the bank, and afterwards, $8,500 in real property. This accounts for within fifteen hundred dollars of their subscriptions, and as the association of Russell & Holmes had retained bills receivable to the amount in par value of over $91,-000, it is not difficult to believe that this balance might have been paid as required. In a general way it was shown by the testimony of Charles A. Holmes that Russell & Holmes transferred to the Tecumseh National Bank, notes, other than those above referred to, after the last named bank had commenced business, but it was also shown by other evidence that these notes in each instance were paid for at the times when they were discounted. There was also testimony that real property of Russell & Holmes had been to the amount in value of $25,000 turned over to the Tecumseh National Bank as security for debts owing said national bank by Russell & Holmes, not earlier than the month of September, 1891. Of the stock of Charles A. Holmes and James D. Russell in the Tecumseh National Bank, $1,000 in par value was very soon transferred to Warren H. Holmes. In September, 1891, the holders of this $20,000 of stock pledged it as collateral security for a loan made them by the First National Bank of Lincoln. Subsequently the bank last named purchased this stock and has since continued to hold it. Of the other $30,000 stock of the Tecumseh National Bank, some was paid for in cash and some in certificates of deposit which had been issued by Russell & Holmes. The amount of each of these certificates, however, was paid to the National Bank by Russell & Holmes.

From a consideration of all the evidence upon which this case was tried, we are led to the conclusion that there was no proof of an undertaking, express or implied, that the Tecumseh National Bank would pay the indebtedness

of Russell & Holmes. The association last named, when it was succeeded in business, had a good financial reputation, and, with assets which it retained, continued to pay its indebtedness as presented for more than a year after that time. This transfer was April 14, 1890, and there were paid on the certificate of deposit first herein described, $9 on June 14, 1890, $56.75 March 28, 1891, June 13, 1891, $9, being interest to June 11, 1892. On the other certificate of deposit there were the following payments: $15, interest to July 26, 1890; $15, interest to July 25, 1891; $15, interest to July 18, 1892. It is claimed that these, or some of these, payments were made by the Tecumseh National Bank, and that, therefore, it should be held liable as to the balance. It was shown, however, that in almost every instance the payments were made by Russell & Holmes; that that association was winding up its business in the banking room of the Tecumseh National Bank, and when payments were made by that bank for Russell & Holmes, it was because the amount was small and no member of that association was present, and that the amount advanced was speedily replaced by Russell & Holmes in every instance. For more than a year after the Tecumseh National Bank had become its successor the association of Russell & Holmes was regarded as being perfectly solvent, and by the defendant in error was so dealt with. After the lapse of more than three years from the time the Tecumseh National Bank began business it was, by this suit, sought to hold it liable for the debt of its predecessor. While the corporation is the same that began business, the stockholders in the meantime have changed, so that the delay noted will operate to their injury if this action is maintainable. Under such circumstances it devolved upon the plaintiff in error to show that she was entitled to the relief prayed, and in this we think she has entirely failed. The judgment of the district court is therefore

REVERSED.

NORVAL, J.

I dissent. The petition in the court below, in every essential particular, is identical with that in the case of *Eans v. Exchange Bank of Jefferson City*, 79 Mo., 182, which the supreme court of Missouri held, and, I believe, rightly, stated a cause of action. The facts in the record before us, some of which are stated in the majority opinion, fully sustain every material averment contained in the petition, and establish the liability of the defendant bank for plaintiff's demand. The judgment should therefore be affirmed.